House *v.* Grant.

---

SOPHRONIA HOUSE, Respondent, *v.* LEWIS B. GRANT, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1871.)

The delivery of a negotiable security, with intent to give the same *mortis causa*, vests the title in the donee, subject to the rights of the donor's personal representatives to call it in question, for the benefit of creditors, to the extent of their claims.

Claims against the donor, presented to his administrator, but not otherwise established, do not, as against the donee, show the existence of debts.

In an action by a donee, *causa mortis*, of a promissory note, payable to bearer, against the maker, who has paid the same to the donor's administrator, without production of the note, the defendant cannot interpose the claims of creditors to defeat the plaintiff's right to recover. Per JOHNSON, J.

APPEAL by the defendant from a judgment entered on the report of a referee. The facts appear in the opinion of TAL-COTT, J.

*P. S. Cottle*, for the appellant.

*W. A. Barden*, for the respondent.

Present— MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court— TALCOTT, J. This action is brought on two promissory notes, dated August 1st, 1868, payable to Jemima Gould, or bearer. Jemima Gould died on the 17th day of October, 1868. The notes were made by the defendant and given in consideration of money loaned by the payee to the defendant, and were for the aggregate sum of $900 principal, payable with interest; no time being specified for the payment. In February, 1869, administration was duly granted upon the estate of Jemima Gould. Claims have been presented to the administrators, duly verified, amounting to $347.65. The notes are in the possession of the plaintiff, under a claim of title, acquired during the lifetime of the payee. The administrators of the payee, without producing the notes, demanded payment thereof from the defendant the maker, who, upon being indemnified, paid the same to the administrators, and now sets up such payment in defence to this action.

The question involved is merely the title to the notes. The history of the plaintiff's title is, that in the spring of the year, 1868, the payee of the notes came to live with the plaintiff, expressing her intention of remaining with her during her life; and about the time the notes were made the payee entered into an agreement with the plaintiff that the plaintiff should "provide for, care for, support, and maintain the said Jemima for and during the term of her natural life, at the plaintiff's house; and should pay the funeral expenses of the said Jemima after her decease, and provide a set of

tombstones for the said Jemima's grave; and that, in conside-
ration thereof, all the property which the said Jemima had at
her decease, should belong to, and become the property of the
·plaintiff."

Furthermore, during the last illness of Jemima, and on the
day previous to her death, and, as the referee finds, "in view
of approaching death, and in pursuance of the agreement,"
aforesaid, the said Jemima deliberately, and in the presence
of a witness present at her request to witness the transaction,
sent for the notes, took them into her possession, and delivered
them over to the plaintiff, as her, the plaintiff's property,
and the plaintiff received the same, and has ever since had
the possession thereof.  The intestate was a woman upward
of seventy years of age, and, so far as appears, had no near
relatives except a husband, a lunatic, under the charge of a
committee, and had a separate estate consisting only of the notes
in question, and a few articles of household furniture of
trifling value.  There is no fund in the hands of the admin-
istrators, or existing, out of which to pay any claims, unless
resort can be had to the amount of the notes.

Without any reference to the agreement which was made at
the time the money was loaned upon the notes by Mrs. Gould,
the circumstances which transpired on the day before her
death, vested the legal title to the notes in suit in the plain-
tiff, as a *donatio causa mortis*, if the donor was then of sound
and disposing mind and memory.  The delivery of a negoti-
able security, with intent to give the same *mortis causa* as is
abundantly settled, vests the title.

The referee finds, as we think properly upon the evidence,
that at the time the intestate was of sound and disposing
mind and memory, the plaintiff, therefore, by the transfer
and delivery in question, became the lawful owner and holder
of the notes, and entitled to recover the amount thereof,
except so far as a *donatio mortis causa* is liable to be drawn
in question by the personal representatives in behalf of
creditors, and as a fraud upon them.  The first step to be
taken in attacking a transfer of property as void by reason

House *v.* Grant.

that it is a fraud upon creditors, is to show the existence of such creditors.

The defendant gave no such evidence. Claims presented by parties to the administrators did not establish, as against the plaintiff, the existence of any such debts. So far as any examination of the fact was attempted, the evidence went to show that the claims presented were not made or pretended to exist against the intestate in her lifetime; and it appears quite probable that they were only made with a view of depriving the plaintiff, so far as they could be made to reach, of the benefit of the donation clearly made by the deceased.

The property of the deceased belonged to her to dispose of, as she saw fit; and if a legal disposition has been made of it, even to a stranger, and however much to the disappointment of her distant relatives, that disposition being according to the will of the owner, must stand, except so far as there may be existing creditors to impeach it. It is noticed, also, that even the claims presented to the administrators, whether real or pretended, are much less than the amount of the notes, so that the administrators could impeach the title of the plaintiff, even if they had shown actual existing debts, only to about one-third of the donation.

The judgment should be affirmed.

JOHNSON, J. Upon the facts found by the referee, which are entirely in accordance with the evidence, the plaintiff was the lawful owner and holder of the notes in question, as against the defendant and all the world, except, perhaps, the creditors of the payee, to the extent of their lawful demands. The defendant is not a creditor, and has no interest in the claims of creditors, and shows no good reason in law for undertaking to interpose the claims of creditors against the estate of the payee, by way of defence to the note. The notes were transferred and delivered to the plaintiff by the payee, for the purpose and with the intention of giving the plaintiff the title. They were payable to bearer, so that title could pass by delivery merely. They were so delivered

several days before the death of Mrs. Gould, the payee, and were in the exclusive possession of the plaintiff from that time up to the time of Mrs. Gould's death, and have been in her possession ever since. The plaintiff's title, therefore, as against Mrs. Gould and her representatives, is perfect. No one but a creditor of Mrs. Gould can be heard to contest the plaintiff's claim; and a creditor can do so only after his claim is established. The defendant is not a creditor of Mrs. Gould, or the estate, and does not represent the claim of any creditor. He is a debtor merely; and, as to him, the plaintiff's title to the notes, and the moneys due thereon, is perfect, whether she took the notes as a gift or by purchase upon a valuable consideration. If he has paid the administrator of Mrs. Gould's estate, he has done it in his own wrong. Mrs. Gould, at her death, did not own the notes, and her administrator consequently took no title by virtue of his appointment.

That the defendant had notice of the plaintiff's claims appears clearly from the fact that he was indemnified against such claims on paying to the administrator. He, of course, knew that the administrator did not have the notes in his possession, and, as they were payable to bearer, that of itself was enough to give him notice, or to put him on inquiry, which was equal to notice. It is not the proper place here to consider and determine the question how far the transfer of these notes, under the circumstances was good, as against the creditors of Mrs. Gould, as the necessary parties to such an inquiry and determination are not before the court. The defendant is no proper party to that controversy, if such an one shall ever arise; and the court will not permit him to thrust himself into it, as a volunteer, in advance.

It is enough, in this stage of the matter, to know that the plaintiff obtained a perfect title, as against Mrs. Gould, in her lifetime, and that the defendant then became, and was, the plaintiff's debtor. It was in no respect necessary that he should have had notice of the transfer. The notes were made payable to the bearer, whoever such bearer might be. There is much in the case well calculated to excite suspicion that

the defendant and the administrator, who is the defendant's attorney in this action, are combining in favor of pretended claims against Mrs. Gould, to prejudice the plaintiff's rights. It appears that claims have been presented to the administrator to about one-half the amount of the notes in question. The fact that they have been presented, however, is no evidence here that they have any valid foundation. They are not in judgment, and were never presented or made to Mrs. Gould in her lifetime. If the administrator performs his duty, he will see that they are duly established *according to* law, and then, and not till then, will any one be in a situation to contest the plaintiff's rights. But, as before remarked, the defendant has nothing to do with that question. It is for him to pay his debt, as he promised, to the lawful bearer and holder of the obligations. The judgment is, in all respects, right, and must be affirmed.

Judgment affirmed.